Filed 11/6/13  Starr v. OneWest Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANDRA STARR et al., | |
| Plaintiffs and Appellants, | G047442 |
| v. | (Super. Ct. No. 30-2010-00427977) |
| ONEWEST BANK, FSB, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Andrew P. Banks, Judge.  Affirmed.

Sandra Starr and Richard Starr, in pro. per., for Plaintiffs and Appellants.

Dykema Gossett, J. Kevin Snyder and Brian H. Newman for Defendant and Respondent.

\*          \*          \*

Plaintiffs Sandra Starr and Richard Starr appeal from a judgment entered after the court sustained without leave to amend the demurrer of defendant OneWest Bank, FSB to the second amended complaint. Although the allegations are framed in a variety of causes of action, the complaint essentially asserts defendant improperly began and maintained non-judicial foreclosure proceedings after plaintiffs defaulted on a note secured by a deed of trust on their residence and failed to properly evaluate their request for refinance of the loan.

On appeal they contend the court erred in concluding their claims were primarily based on violation of the Home Affordable Modification Program (HAMP[1]), which does not allow a private right of action, and that instead each cause of action states sufficient facts to constitute a claim. They primarily seek pain and suffering damages due to the threat of losing their home. They have not sufficiently pleaded any of the causes of action nor will they be able to do so. Thus we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs purchased their home in 2001 and refinanced it in 2006, executing a $345,000 note secured by a deed of trust on that property. In August 2008 they wrote to IndyMac Federal Bank, FSB (IndyMac FSB), which owned the loan, seeking a loan modification. In September 2008 plaintiffs stopped making payments. In December 2008 a notice of default was recorded. A few months later defendant began servicing the loan as a result of its purchase of the servicing rights when the original servicer, IndyMac FSB, went into receivership.

---

[1] HAMP was created by the United States Department of the Treasury and associated federal agencies under the authority of the Emergency Economic Stabilization Act (12 U.S.C. § 5201 et seq.).

In September 2009 plaintiffs contacted defendant and asked to be evaluated for a modification of their loan under HAMP. A representative of defendant verbally promised plaintiffs they would be considered for a modification if they provided all necessary documents, i.e., the "Initial Package." By the end of March 2010 plaintiffs supplied the Initial Package but defendant requested additional information and claimed not to have received everything plaintiffs had supplied. Plaintiffs faxed all requested documents to defendant several times over the next year and a half through November 2011. Plaintiffs also allege defendant denied their request for a modification in March 2010 because they did not qualify for a loan workout.

In June 2010 plaintiffs were notified their request for a loan modification was being considered and were apparently again asked to send the Initial Package. Plaintiffs submitted a complete Initial Package by October but defendant repeatedly asked for the same information.

In November 2010, while the application for the modification was still in process, plaintiffs, in propria persona, filed their original complaint containing 18 causes of action. When defendant filed a demurrer, plaintiffs filed an amended complaint, adding eight more causes of action. The court sustained defendant's demurrer to the first amended complaint with leave to amend and plaintiffs retained an attorney who filed the second amended complaint.

The second amended complaint[2] lists 13 causes of action for negligence, intentional and negligent misrepresentation, breach of oral contract and of the covenant of good faith and fair dealing, promissory estoppel, intentional and negligent infliction of emotional distress, unfair business practices (Bus. & Prof. Code, § 17200 et seq., UCL),

---

[2] Although other parties are named we refer only to defendant.

3

unfair debt collection practices (Civ. Code, § 1788 et seq.)[3], slander of title, quiet title, and to cancel foreclosure documents and enjoin a foreclosure sale. It alleges defendant is jointly liable for all injuries and damages alleged.

In the general allegations, plaintiffs plead the "action is to remedy a common[] plan or scheme and pattern and practice to obtain title and possession of [p]laintiffs' home . . . . [Defendant] (1) breached its duties . . . and other express and[/]or implied promises made to [p]laintiff[s] to consider and evaluate [p]laintiffs for a HAMP load modification in good faith[;] (2) continued to threaten foreclosure during [p]laintiffs' HAMP evaluation; and (3) failed to comply with HAMP duties and standards precluding [*sic*] [p]laintiffs a good faith evaluation under HAMP." Defendant "acted without proper authority under California law" (underscoring omitted) and failed to comply with the terms of the trust deed.

Plaintiffs also state they are citing to HAMP and sections 2923.5 et seq., 2924 et seq., and 2934a et seq., not to support a "private right of action, but as factual allegations and prima facie proof of breaches of mandatory standard industry practices and duties that violate federal/state regulations in support of each cause of action." (Underscoring omitted.)

Plaintiffs extensively allege the history and purpose of HAMP, quoting some of its provisions. They plead "[s]ection 129" states the Department of Treasury Guidelines issued under the Emergency Economic Stabilization Act of 2008 "shall constitute standard industry practice." (Boldface, italics & underscoring omitted.) They also allege, without citation, HAMP was set up "to standardize industry practices" as to modifications and must be followed. (Boldface & underscoring omitted.) They further plead, again without identifying the source, that loan servicers must "consider all eligible mortgage loans." (Boldface & underscoring omitted.)

---

[3] All further statutory references are to the Civil Code unless otherwise specified.

The second amended complaint alleged that to some extent defendant failed to follow required procedures for foreclosing, in violation of sections 2924b, 2924f, 2924g, 2924.8, and 2934a. Citing the HAMP handbook[4] plaintiffs allege several HAMP violations by defendant. These include a refusal to consider a HAMP modification, failure to offer a Trial Period Plan (TPP) or send a denial letter, failure to acknowledge receipt of and review the Initial Package plaintiffs provided, failure to advise that the Initial Package was incomplete, failure to provide plaintiffs with a single contact person, and failure to suspend the foreclosure sale and to advise plaintiffs of same while the HAMP request was pending.

Plaintiffs also plead that although they provided defendant with the Initial Package, defendant continued to request updated documents for approximately a year thereafter. Plaintiffs complied with these requests. Even when those documents were submitted, defendant failed to approve a TPP or issue a letter denying a HAMP modification.

The specific allegations as to each cause of action are set out in the discussion.

Plaintiffs' alleged damages include emotional distress and physical injury, requiring medical care and medication.

Defendant filed a demurrer to the second amended complaint. While it was pending, as plaintiffs acknowledged in their opposition to the demurrer, defendant approved plaintiffs for a TPP under HAMP and, when that was completed, offered plaintiffs a permanent loan modification.

---

4 Plaintiffs cite to a version of the handbook that was not promulgated until September 2011, well after most of the alleged misconduct. They also failed to provide a copy of the applicable handbook.

5

The court sustained the demurrer without leave to amend, ruling that the claims were largely based on alleged violations with HAMP, under which plaintiffs had no standing to sue. Further, some claims were moot because the loan modification had been offered to plaintiffs.

DISCUSSION

*1. Introduction*

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) But we do not assume the truth of speculative allegations (*Rotolo v. San Jose Sports and Entertainment, LLC* (2007) 151 Cal.App.4th 307, 318) or "contentions, deductions or conclusions of law" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967). "[W]e give the complaint a reasonable interpretation, and read it in context. [Citation.]" (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.) If the demurrer can be sustained on any ground raised, we must affirm. (*Ibid.*) If the court sustains a demurrer without leave to amend and a plaintiff seeks leave to amend, he or she must demonstrate how the complaint could be amended to state a valid cause of action. (*Ibid.*)

*2. Rosenthal Fair Debt Collection Practices Act*

The Rosenthal Fair Debt Collection Practices Act (§ 1788 et seq.; Rosenthal Act) was enacted, in part, "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." (§ 1788.1, subd. (b).) Those unfair practices include threats, harassment, use of profanity, and "false simulation

of the judicial process." (*Sipe v. Countrywide Bank* (E.D.Cal. 2010) 690 F.Supp.2d 1141, 1151.)

Plaintiffs allege defendant violated the Rosenthal Act by wrongfully threatening to foreclose on their property, knowing it was a violation of foreclosure statutes and HAMP and because it rescheduled the foreclosure sale multiple times while plaintiffs' HAMP application to modify their loan was pending.

But foreclosing under a trust deed is not debt collection under the Rosenthal Act. (*Sipe v. Countrywide Bank, supra,* 690 F.Supp.2d at p. 1151; accord, *Moriarity v. Nationstar Mortgage, LLC* (E.D.Cal. July 3, 2013, No. 1:13-cv-00855-AWI-SMS) 2013 WL 3354448; *Velasco v. Homewide Lending Corp.* (C.D.Cal. June 21, 2013, No. SACV 13-00698-CJC (RNBx)) 2013 WL 3188854; *Tarsha v. Bank of America, N.A.* (S.D.Cal. Mar. 29, 2013, No. 11-cv-928-W(MDD)) 2013 WL 1316682.) The Rosenthal Act applies to the collection of consumer debts (§ 1788.2, subd. (b)), those owed resulting from a "consumer credit transaction" (§ 1788.2, subd. (f)), i.e., where "property, services or money is acquired on credit . . . primarily for personal, family, or household purposes" (§ 1788.2, subd. (e)).

As plaintiffs cite, a few federal district court cases have deviated from the general rule, but none dictates a different result here. For example, the complaint in *Ansanelli v. JP Morgan Chase Bank, N.A.* (N.D.Cal. Mar. 28, 2011, No. C10-03892(WHA) 2011 WL 1134451 was not based on claims under the Rosenthal Act.

In *Herrera v. LCS Financial Services Corp.* (N.D.Cal. Dec. 22, 2009, No. C09-02843-TEH) 2009 WL 5062192 the creditor sent the plaintiff a demand letter seeking payment on a second trust deed after the security had been extinguished by a nonjudicial foreclosure by the first trust deed holder. In *Walters v. Fidelity Mortgage* (E.D.Cal. 2010) 730 F.Supp.2d 1185, the court held the defendant was a debt collector whose conduct went "beyond the scope of the ordinary foreclosure process." (*Id*. at p. 1203.) The conduct was misrepresenting additional fees would be charged, which is a

violation of section 1788.13, subdivision (e). This was sufficient to defeat the defendant's motion to dismiss her claim. (*Walters v. Fidelity Mortgage, supra,* 730 F.Supp.2d at p. 1204.) *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575 confirmed foreclosing on property that secures a debt is not covered by the Rosenthal Act. (*Id*. at p. 582.) But the claim was allowed to stand because the complaint did not mention foreclosure. (*Ibid*.)

In *In re Bank of America HAMP Contract Litigation* (D.Mass. July 6, 2011, No. 10-md-02193-RWZ) 2011 WL 2637222 the plaintiffs filed a putative class action and entered into a TPP with the defendant, making reduced payments on their mortgages in exchange for a promise of a permanent loan modification, which they did not receive. The defendants moved to dismiss the claim under the Rosenthal Act, arguing foreclosure was not a debt collection nor were they debt collectors. The court denied the motion as premature, merely citing three cases it characterized as holding mortgages on family residences were consumer debts. (*Id*. at p. *6.) These included *Walters v. Fidelity Mortgage, supra*, 730 F.Supp.2d 1185 and *Ohlendorf v. American Home Mortgage Servicing, supra,* 279 F.R.D. 575, neither of which so held, as described above.

The third case was *Reyes v. Wells Fargo Bank, N.A.* (N.D.Cal. Jan. 3, 2011, No. C-10-01667 JCS) 2011 WL 30759, where the plaintiffs alleged the defendants urged them to enter into a six-month forbearance agreement with reduced payments, promising to consider modification of their loan, knowing plaintiffs would never be able to pay the modified loan amount. The plaintiffs made the payments but the defendants foreclosed on their home during the six-month period. In their cause of action for violation of the Rosenthal Act, the plaintiffs alleged the defendants were debt collectors using debt collection practices of false, misleading and deceptive statements in their attempt to collect on the mortgage.

*Reyes* acknowledged that "the process of foreclosure is not actionable as 'debt collection' under the Rosenthal Act." (*Reyes v. Wells Fargo Bank, N.A., supra,*

8

2011 WL 30759 at p. *20.) It noted, in a footnote, that it could not state "categorically" collection on a mortgage could never give rise to a claim under the Rosenthal Act but that analysis should depend on a defendant's alleged actions. (*Id*. at p. *19, fn. 8.) In *Reyes* the claim was not the mere act of foreclosure but making alleged deceptive statements. (*Id*. at p. *20.)

Finally, the recent case, *Corvello v. Wells Fargo Bank, N.A.* (9th Cir. 2013) 728 F.3d 878 weighed in on this question when considering if the two consolidated cases should have been dismissed for failure to state a claim. (Fed. Rules Civ.Proc., rule 12(b)(6); 28 U.S.C.) In *Corvello*, the primary issue was whether the defendant was required to offer the plaintiffs permanent loan modifications after they complied with their TPP's. The court ruled the pleading was sufficient to state a claim on that basis. (*Corvello v. Wells Fargo Bank, N.A., supra,* 728 F.3d at p. 885.)

In *Corvello* the Rosenthal Act claim was a secondary issue. The court noted the defendant had acknowledged it was a debt collector as defined in the Rosenthal Act. With no analysis, the court agreed with the district court's finding the defendant "was engaged in debt collection." (*Corvello v. Wells Fargo Bank, N.A., supra,* 728 F.3d at p. 885.) Relying on *In re Bank of America HAMP Contract Litigation, supra,* 2011 WL 2637222 and *Reyes v. Wells Fargo Bank, N.A., supra,* 2011 WL 30759, it determined the "TPP was more than an informational circulation." (*Corvello v. Wells Fargo Bank, NA, supra,* 728 F.3d at p. 885.)

We are not necessarily convinced by *Reyes*'s reasoning about whether a foreclosure is a debt collection under the Rosenthal Act or *Corvello's* inconclusive determination regarding the TPP, but even if we were, the allegations in the case before us do not fall within the Rosenthal Act. Here, the claim is that defendant postponed the foreclosure sale several times while considering the HAMP application. Postponing a sale is well within the ordinary scope of foreclosure as is reporting derogatory information to a credit bureau. Plaintiffs' allegation defendant continued to make threats

9

while the HAMP application was pending is not supported by the exhibit to the second amended complaint on which they rely, which contains a notice of foreclosure, a notice of trustee's sale, and several news releases prepared by plaintiffs claiming defendant was illegally foreclosing. Moreover, here the TPP was executed after the alleged wrongful conduct.

In sum, none of the cases nor the factual allegations on which plaintiffs rely support their Rosenthal Act cause of action. There is no basis on which this claim could be amended; therefore the demurrer was properly sustained without leave to amend.

*3. Intentional and Negligent Misrepresentation*

Plaintiffs allege claims for intentional and negligent misrepresentation. An intentional fraud cause of action must plead a misrepresentation made with knowledge of its falsity and with intent to defraud, justifiable reliance, and resulting damage. (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) "'The elements of negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."' [Citation.]" (*Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.* (2011) 196 Cal.App.4th 1559, 1573.)

In the intentional misrepresentation cause of action plaintiffs allege defendant falsely represented it would consider a loan modification but did not intend to do so. They make virtually the same allegation in the negligent misrepresentation cause of action. But plaintiffs affirmatively represented in their opposition to the demurrer that defendant offered them a loan modification. They argued this was evidence defendant admitted they were qualified for a HAMP modification, which modification should have occurred two years earlier. But this actually defeats their allegation of intent to defraud. The trial court relied on this representation in making its ruling, without objection by

10

plaintiffs. Plaintiffs do not raise this as an issue in their opening brief and they filed no reply brief, thus failing to respond to defendant's reliance on this representation in its brief.

We treat the affirmative representation defendant offered plaintiffs a TPP and permanent loan modification as pleaded. (See *RealPro, Inc. v. Smith Residual Co., LLC* (2012) 203 Cal.App.4th 1215, 1221, fn. 2 [in addition to allegations in complaint, "'we may consider other relevant matters of which the trial court could have taken judicial notice and we may treat such matters as having been pleaded'"]; see also *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604-605 [under doctrine of truthful pleading, in deciding demurrer court may consider declarations filed on the plaintiff's behalf and the plaintiff's responses to requests for admissions and sustain demurrer when these conflict with allegations in facially valid complaint]; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 ["Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts that are judicially noticed'"].)

Plaintiffs relied on the representation of the offer of the TPP and permanent loan modification in support of their demurrer. It would be inequitable for us to ignore it in ruling on the demurrer. The representation defeats an essential element of both intentional and negligent misrepresentation. Again, there is no basis to amend because plaintiffs cannot plead around a fact they have admitted. (See *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 [in amended complaint the plaintiff may not omit detrimental allegation from prior complaint].)

*4. Negligence Claims*

Plaintiffs raised claims of both negligence and negligent infliction of emotional distress. To state a negligence cause of action a plaintiff must allege the

11

defendant owed the plaintiff a duty of care, defendant's breach of that duty, and the breach proximately caused the plaintiff's damages. (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.) "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 482.) Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence and has the same elements. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.)

Plaintiffs allege defendant owed them a duty of care and "'reasonable efforts'" under HAMP, including a duty to consider any loan eligible for modification. They also plead defendant had a duty to strictly comply with certain provisions of the Making Home Affordable Handbook in connection with the request for a loan modification under HAMP, as well as sections 2924 et seq., 2923.5 et seq., and 2934a et seq., in servicing and foreclosing on loans.

A lender does not owe a borrower a duty of care when the relationship is merely that of lender and borrower. (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 898.) The same rule applies to loan servicers. (*Somera v. IndyMac Federal Bank, FSB* (E.D.Cal. Mar. 3, 2010, No. 2:09-cv-01947-FCD-DAD) 2010 WL 761221, p. *5.)

Plaintiffs cite *Ansanselli v. JP Morgan Chase Bank, N.A., supra,* 2011 WL 1134451 in support of their argument. In *Ansanselli* the court found the defendant went beyond its traditional role as a lender when it guaranteed it would modify the loan if the plaintiff timely made all the payments due under a TPP. (*Id*. at p. *7.) But the holding in *Ansanelli* is a minority view that we find unpersuasive.

Instead, we agree with the majority of cases that hold loan modifications do not create a relationship beyond that of lender and borrower. In *Bunce v. Ocwen Loan Servicing, LLC* (E.D.Cal. July 17, 2013, No. 2:13-00976 WBS EFB) 2013 WL 3773950, for example, the plaintiff sued the defendant loan servicer for negligence, among other

12

claims, based on facts strikingly similar to those in the case before us. He alleged the defendant told him to submit applications to modify his loan, but repeatedly asked for the same documents and then denied a modification without reviewing the application and without explaining the basis for the refusal. The defendant also failed to then discuss other ways to avoid foreclosure but instead began the foreclosure process.

The court held the defendant owed no duty because all of the defendant's alleged wrongful acts concerned its review of the application to modify the plaintiff's loan. This did not go beyond a traditional lender-borrower relationship. (*Id*. at p. *5; see, e.g., *Armstrong v. Chevy Chase Bank, FSB* (N.D.Cal. Oct. 3, 2012, No. 5:11-cv-05664 EJD) 2012 WL 4747165, p. *4 [loan modification "is nothing more than a renegotiation of loan terms"]; see also *Alvarado v. Aurora Loan Services, LLC* (C.D.Cal. Sept. 20, 2012, SACV 12-0524-DOC-JPRx) 2012 WL 4475330, p. *6; *Johnston v. Ally Financial Inc.* (S.D.Cal. July 29, 2011, No. 11-CV-0998-H (BLM) 2011 WL 3241850, p. *4.)

Further, even if the reasoning in *Ansanselli* was correct, the case is distinguishable because here the claims do not arise out of any negligence in connection with the TPP.

Nor do violations of sections 2924 through 2924k give rise to a negligence cause of action. (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 827 [Legislature enacted "comprehensive statutory scheme" of conduct of nonjudicial foreclosures; courts should not "graft[] a tort remedy" for violation of statute]; see also *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834 ["The comprehensive statutory framework established to govern nonjudicial foreclosure sales[, including] a myriad of rules relating to notice" "is intended to be exhaustive. . . . It would be inconsistent . . . to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings"].)

13

As to section 2923.5, the only remedy for violation is postponement of the foreclosure sale; a negligence claim does not lie. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 223-224.)

The second amended complaint alleges defendant breached its duty to record a valid substitution of trustee as required by section 2934a. Plaintiffs plead they sustained general and special damages and also seek punitive damages as a result. They claim they have "been left financially devastated," have sustained damage to their credit, were unable to work and lost income, and suffered physical and emotional harm. But they have not specifically alleged how failure to record a valid substitution of trustee harmed them. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [in suit for wrongful foreclosure the plaintiff must "demonstrate the alleged imperfection in the foreclosure process was prejudicial . . . . Prejudice is not presumed from 'mere irregularities' in the process"].) Moreover, any damage suffered would have been de minimis and not actionable or recoverable. (*Harris v. Time, Inc.* (1987) 191 Cal.App.3d 449, 458.)

Because plaintiffs have not alleged a duty, neither cause of action is adequate. Given that this was plaintiffs' third attempt to plead these claims and they have not suggested how they could cure the cause of action, leave to amend was properly denied.

*5. Intentional Infliction of Emotional Distress*

The elements of a cause of action for intentional infliction of emotional distress are a defendant's outrageous conduct with the intent to cause, or a reckless disregard of the likelihood of causing, emotional distress; and the defendant's actual and proximate cause of severe emotional distress suffered by the plaintiff. (*Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1108.) To be considered outrageous, """"[c]onduct . . . must be so extreme as to exceed all bounds of that usually tolerated in a

14

civilized society.'" [Citations.]" (*Ibid.*) "The California Supreme Court has set a 'high bar' for what can constitute severe distress. [Citation.] 'Severe emotional distress means "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" [Citations.]' [Citations.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1376.)

The alleged outrageous conduct was defendant's violation of federal and state statutes by continuing to threaten to foreclose during the pendency of an application to modify plaintiffs' loan under HAMP and its refusal to consider the application. Plaintiffs conclusorily plead the conduct was "outrageous, extreme, fraudulent, deceptive, unfair" and violated federal and common law. In their brief plaintiffs do not expand upon the second amended complaint's allegations, but merely state defendant's conduct was not privileged and was "outside the normally required conduct within the foreclosure scheme" (italics omitted), beyond "'all reasonable bounds of decency' and may rise to the level of outrageous conduct." The cause of action is insufficient.

In *Coleman v. Republic Indemnity Ins. Co*. (2005) 132 Cal.App.4th 403 the plaintiffs alleged the defendant had advised a claimant not to hire a lawyer and misrepresented the statute of limitations within which to file a claim, both statutory violations. The court ruled this was not a sufficient allegation to support a cause of action for intentional infliction of emotional distress. (*Id*. at p. 417.) In so doing, it cited a line of California cases that hold neither delay nor outright denial of insurance claims is outrageous enough to support an intentional infliction of emotional distress cause of action. (*Ibid*.)

Similarly a delay in considering a loan modification while continuing to maintain a foreclosure proceeding does not support the cause of action. (See *Lesley v. Ocwen Financial Corp.* (C.D.Cal. Mar. 13, 2013, No. SA CV 12-1737-DOC (JPRx)) 2013 WL 990668, p. *11 [the defendant's denial of HAMP modification because death of the plaintiffs' son was not considered a hardship, insufficient to support intentional

15

infliction of emotional distress cause of action]; *Becker v. Wells Fargo Bank, NA, Inc.* (E.D.Cal. Nov. 30, 2012, No. 2:10-cv-02799 LKK KJN PS ) 2012 WL 6005759, p. *16 [intentional infliction of emotional distress cause of action insufficient based on the defendant's alleged failure to "quickly" grant loan modification under HAMP after representing to the plaintiff it would do so if he complied with certain requirements]; see also *In re Jenkins* (Bankr. E.D.Tenn. 2013) 488 B.R. 601, 617 [lender's institution of foreclosure during consideration of HAMP modification request and while TPP in place not so extreme as to support intentional infliction of emotional distress cause of action under Tennessee law].)

The conduct in all of these cases essentially mirrors that on which plaintiffs rely, i.e., statutory violations when defendant continued the foreclosure action while it delayed considering plaintiffs' request for a HAMP loan modification. This does not measure up to the "high bar" required to plead a cause of action for intentional infliction of emotional distress, even taken with the allegation defendant knew plaintiffs were senior citizens. Plaintiffs have not suggested any allegations they could add were we to give leave to amend.

*6. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs allege that when they sought a loan modification from defendant, its representatives "orally promised" them that if they provided the Initial Package, defendant would consider a modification under HAMP. Defendant breached by "failing to comply with HAMP standard industry practices" by "ignoring" plaintiffs' application for modification and failing to "make a 'reasonable effort' to" offer a TPP to plaintiffs within 30 days of receiving the Initial Package or send a denial letter, but instead continuing to ask for additional documents, including some plaintiffs had already provided. Defendant also "repudiated the contract" when it denied the modification because, after review of the request under the HAMP guidelines, it determined plaintiffs

16

did not qualify.[5] Plaintiffs allege this was a "positive[] indicat[ion]" defendant would repudiate its contract.

Plaintiffs maintain that due to defendant's breach they did not receive the benefit of their bargain and were damaged by the threat of foreclosure and a cloud on their title, among other things.

The elements of a breach of contract cause of action are: (1) the existence of a contract; (2) plaintiffs' performance or excuse of performance of their duties under the contract; (3) defendant's breach; and (4) plaintiffs' damages. (*First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.) A valid contract requires, among other things, valuable consideration. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1269.)

Further there is a duty of good faith and fair dealing implied in every contract that a party will not perform any acts that will interfere with the other party's right to receive the benefits under the contract. (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1014.) A cause of action for breach of that covenant requires the same allegations as a breach of contract claim except it must plead both an implied promise and defendant's unfair interference with plaintiffs' right to receive the fruits of the contract. (*Yari v. Producers Guild of America* (2008) 161 Cal.App.4th 172, 182.)

Plaintiffs' causes of action have several deficiencies. But we need not discuss most of them. As plaintiffs acknowledge, they did receive the benefit of the bargain. Despite an alleged threat of foreclosure and a cloud on their title, their loan was permanently modified. Thus, no sufficient breach is alleged and neither cause of action can stand. Again, plaintiffs have not advised of, and we have not found, any basis to

---

[5] Although plaintiffs did not allege it, the exhibit containing the denial also shows that decision was to be disregarded and additional pay stubs from plaintiffs were to be requested.

17

amend the causes of action and the court's order sustaining them without leave to amend must stand.

### 7. *Promissory Estoppel*

The second amended complaint alleges defendant "made clear, definite and certain promises to [p]laintiffs to induce them to enter into oral executed agreements . . . ." Specifically, defendant promised to evaluate plaintiffs in good faith for the possibility of a loan modification under HAMP if plaintiffs provided the Initial Package, hold off on the foreclosure sale during the evaluation, and not conduct a foreclosure sale at all. Due to these false promises, plaintiffs failed to "take legal action against" defendant and suffered damages and personal injury. Plaintiffs allege failure to enforce the promises would result in injustice.

The elements of a promissory estoppel claim are a clear and unambiguous promise, reasonable and foreseeable reliance by the promisee, and injury to the promisee. (*Wells Fargo Bank, N.A. v. FSI Financial Solutions, Inc., supra,* 196 Cal.App.4th at p. 1573.) "'Estoppel cannot be established from . . . preliminary discussions and negotiations.' [Citation.]" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

This cause of action has several problems. But, as with the breach of contract cause of action, and as plaintiffs acknowledge, defendant did evaluate their application and offered them a TPP and ultimately a permanent loan modification.

Thus, this cause of action is also insufficient. Plaintiffs have not shown how they could amend to cure these deficiencies, nor can we see a solution. In addition, plaintiffs have had three chances to sufficiently allege this claim and have been unable to do so. The demurrer as to this claim was properly sustained without leave to amend.

18

*8. Unfair Business Practices*

The UCL prohibits an "unlawful, unfair or fraudulent business practice." Plaintiffs plead defendant's violation of HAMP and state statutes are actionable under that statutory scheme.

The only remedies available to private plaintiffs under the UCL are injunctive relief and restitution. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364.) Neither damages nor attorney fees are recoverable. (*Id*. at p. 371.) "'Restitution under [Business and Professions Code] section 17203 is confined to restoration of any interest in "money or property, real or personal, which may have been *acquired* by means of such unfair competition." . . . A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant on the other.' [Citation.]" (*Ibid*.)

Plaintiffs have not pleaded any facts showing they are entitled to restitution. There are no allegations in the second amended complaint showing they have lost any money or property that defendant then acquired. In their brief they merely state defendant's "conduct caused [them] injury and damages."

As to injunctive relief, plaintiffs allege they are entitled to it but it is unclear as to what they are seeking to enjoin, other than perhaps "any prospective wrongful foreclosure." Given that their loan has been permanently modified, any possible foreclosure would not be based on plaintiffs' prior default. Thus, there is no ground for injunctive relief based on the events alleged in the second amended complaint. This precludes any possibility of amending it.

19

*9. Cancellation of Foreclosure Documents, Quiet Title, and Slander of Title*

  *a. Cancellation of Foreclosure Documents and Enjoining Foreclosure Sale and Quiet Title*

Mixed within several pages of legal argument, all of which we disregard as improper, plaintiffs allege defendant violated sections 2923, 2923.5, 2924, 2924b, 2924f, 2924g, and 2934 because it failed to: (1) contact plaintiffs to discuss options to avoid foreclosure and then wait 30 days before it recorded a notice of default; (2) timely mail the required number of copies of the notice of default to plaintiffs; (3) post the notice of default; (4) mail and post a notice to the resident of the property; (5) conduct the foreclosure sale within one year from the date stated in the notice of sale; and (6) ensure Quality had the proper authority to act as trustee and record a valid substation of trustee. Plaintiffs plead there can be no valid foreclosure sale as a result of these violations and ask the court to cancel the foreclosure notices and enjoin sale.

Both of these causes of action are moot because plaintiffs' loan has been permanently modified, foreclosure is not pending, and defendant is not disputing title.

  *b. Slander of Title*

Plaintiffs make no argument as to this cause of action and thus they have waived their claim. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 165 [failure to make reasoned argument forfeits the issue].)

*10. Miscellaneous*

To the extent plaintiffs raise any other issues not clearly set out in headings and supported by reasoned legal argument, they are forfeited. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

## DISPOSITION

The judgment is affirmed.  Defendant is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.